**UNITED STATES of America**

v.

**John Marcus YOUNG.**

**No. TY–79–33–CR.**

United States District Court,
E. D. Texas,
Tyler Division.

May 8, 1980.

John H. Hannah, Jr., U. S. Atty., Jeff Baynham, Asst. U. S. Atty., Tyler, Tex., for plaintiff.

Warren Burnett, Odessa, Tex., William H. Kugle, Jr., Athens, Tex., for defendant.

## ORDER

JUSTICE, Chief Judge.

John Marcus Young, M.D., waived his right to indictment and entered a guilty plea to each count of a three-count information filed against him by the United States of America. The information charged Dr. Young with the one count of violating 21 U.S.C. § 841(a)(1), in that he knowingly, intentionally, and unlawfully dispensed a schedule two narcotic controlled substance for other than a legitimate medical purpose. The information further charged Dr. Young with two counts of violating 21 U.S.C. § 844(a), in that he knowingly, intentionally, and unlawfully possessed a schedule two narcotic controlled substance not obtained or possessed pursuant to a valid prescription or for a legitimate medical purpose. Dr. Young received a prison sentence on January 4, 1980, and is presently incarcerated. On January 28, 1980, the United States requested, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i), judicial au-

thorization to disclose to the Texas State Board of Medical Examiners the transcripted testimony of nine witnesses who testified before a grand jury which investigated Dr. Young. The issue now before the court is whether to permit such disclosure.[1]

## I

## DISCLOSURE WOULD NOT BE PRELIMINARILY TO OR IN CONNECTION WITH A JUDICIAL PROCEEDING

■ Federal Rule of Criminal Procedure 6(e)(3)(C)(i) permits disclosure of matters occurring before a grand jury "when so directed by a court preliminarily to or in connection with a judicial proceeding." Although the Government can point to no pending judicial proceeding in which the requested transcripts might be used, it argues that the judicial proceeding requirement of Rule 6 is satisfied because Dr. Young is authorized by statute to appeal judicially[2] a Board decision to cancel, revoke, or suspend his license.[3] It has not been shown, however, that the Board has even scheduled a hearing to determine whether or not to take adverse action against Dr. Young. Regardless, merely demonstrating that Dr. Young has a right to appeal a possible adverse Board decision if a hearing is held does not satisfy the judicial proceeding requirement of Rule 6.

■ "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed *to avoid a possible injustice in another judicial proceeding* . . . ." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) (emphasis supplied). *Cf. United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940) (compromise of grand jury secrecy permissible "where the ends of justice require it"); *In re Biaggi*, 478 F.2d 489, 492 (2d Cir. 1973) (must balance interest in grand jury secrecy with goal of just result in a judicial proceeding); *In re Grand Jury Proceedings*, 483 F.Supp. 422, 424 (E.D.Pa.1979) ("[T]he court must balance the great interest in grand jury secrecy against the goal of a just result in a possible state judicial proceeding."). The Government has failed to identify any manner in which the requested transcripts could be used to avoid injustice in a judicial proceeding. Disclosure of grand jury materials preliminarily to or in connection with a judicial proceeding has been perceived to be in the interest of justice in situations where such materials are needed (1) to refresh the recollection of a witness who will testify at trial or (2) to impeach witnesses or test their credibility at trial. *See, e. g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979); *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v. Procter & Gamble Co.*, 356 U.S.

---

1. The decision whether or not to order the disclosure of grand jury transcripts pursuant to Rule 6 lies within the discretion of the district court. *See, e. g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 228, 99 S.Ct. 1667, 1678, 60 L.Ed.2d 156 (1979) ("Generally we leave it to the considered discretion of the district court to determine the proper response to requests for disclosure under Rule 6(e)."); *State v. United States Steel Corp.*, 546 F.2d 626, 629 (5th Cir. 1977) (district court decision reviewed by abuse of discretion standard in appellate court); *Allis-Chalmers Manufacturing Co. v. City of Fort Pierce*, 323 F.2d 233, 241 (5th Cir. 1963) (disclosure of grand jury testimony within discretion of trial court).

2. "Any person whose license to practice medicine has been cancelled, revoked or suspended by the Board may . . . take an appeal to any of the district courts in the county of his residence . . . ." Tex.Rev.Stat.Ann. art. 4506.

3. "The Texas State Board of Medical Examiners shall have the right to cancel, revoke, or suspend the license of any practitioner of medicine upon proof of the violation of the law in any respect with regard thereto, or for any cause for which the Board shall be authorized to refuse to admit persons to its examination . . . ." Tex.Rev.Stat.Ann. art. 4506. Among other reasons, the Board may refuse to admit a person to its examination if he or she has been convicted (1) of a felony involving moral turpitude and (2) prescribing drugs for non-therapeutic reasons. Tex.Rev.Stat.Ann. art. 4505.

677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *State v. United States Steel Corp.*, 546 F.2d 626, 631 (5th Cir. 1977); *Allis-Chalmers Manufacturing Co. v. City of Fort Pierce*, 323 F.2d 233, 241 (5th Cir. 1963) ("[W]hile the secrecy of grand jury proceedings is to be preserved against wholesale revelation, the needs of justice may require that limited portions of grand jury testimony be made available in particular instances to show inconsistencies and to refresh recollection.").[4] Neither the Government nor the Board had made the court aware of such needs.

■ Focusing on Dr. Young's right judicially to appeal adverse action by the Board, the government cites several cases in support of the proposition that it is the connection between the proceeding in which the grand jury material is used and a future judicial proceeding which determines whether the "preliminarily to or in connection with a judicial proceeding" requirement has been met. *See Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973); *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958); *United States v.*

*Salanitro*, 437 F.Supp. 240 (D.Neb.1977), aff'd sub nom., *In the Matter of Disclosure of Testimony Before the Grand Jury*, 580 F.2d 281 (8th Cir. 1978); *In re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974). In light of *Douglas Oil*, it appears incorrect to focus on the relationship between proceedings rather than to focus on the ·actual use of grand jury material which is released. Application of Rule 6 should not become a game in which parties secure release of grand jury material for use in a non-judicial proceeding merely by showing some relationship between a non-judicial proceeding and a future judicial proceeding. The phrase "preliminarily to or in connection with a judicial proceeding" should, at the least, mean that requested grand jury material will be used in preparation for a judicial proceeding that is more than a remote potentiality.[5] Even if the Board planned to hold an administrative hearing, therefore, this fact alone would not justify production of the requested transcripts in the absence of showing that production is sought to prevent injustice in a judicial proceeding.

---

4. In the following section of this order, it is indicated that a moving party must demonstrate a particularized, compelling need in order to obtain grand jury material. There is a relationship between that requirement and the requirement that the requested material be sought to prevent possible injustice in a judicial proceeding. The former relates to the *degree* of need which must be shown, requiring the demonstration of a compelling need to justify disclosure. The latter relates the *kind* of need which must be shown, requiring that the need must arise in relation to a judicial proceeding. Both elements must be shown before grand jury material will be released. If material is sought for a non-judicial purpose, it matters not how great the need. Although injustice may arise in non-judicial forums, Rule 6(e)(3)(C)(i) addresses only need arising preliminarily to or in connection with a judicial proceeding.

5. Even if it were proper merely to focus on the relationship between a Board hearing and possible judicial review rather than to focus on the actual use of the requested material, that relationship is too attenuated to satisfy even that conception ·of the judicial proceeding requirement of Rule 6. Judicial appeal pursuant to article 4506 can occur only if adverse action against Dr. Young is taken by the Board.

Holding a hearing does not insure that such adverse action will be taken; if it were otherwise, the Board hearing would be a hoax. Nor is an appeal from an adverse Board decision automatic. An aggrieved physician must file an appeal, and the Board can suspend his or her right of appeal by imposing a probation term, *see* Tex.Rev.Stat.Ann. art. 4506. An adverse decision by the Board takes effect without judicial intervention, and any sanction imposed upon a physician is effective during the entire pendency of an appeal. Finally, judicial review of a Board decision is limited to substantial evidence review.

Upon appeal of the Board's order to the district court, the proceeding is under the substantial evidence rule. Tex.Rev.Civ.Stat. 4506 (1976). The order is presumed to be valid and the burden is upon the one appealing from the order to show that the order appealed from is not reasonably supported by substantial evidence, existing at the time of the entry of the order. *Gibraltar Savings & Loan Association v. Falkner*, 371 S.W.2d 548, 549 (Tex.1963), and cases cited therein. *Thompson v. Texas State Board of Medical Examiners*, 570 S.W.2d 123, 130 (Tex.Civ.App. —Tyler 1978).

It is, moreover, plain that the Board intends to use the requested transcripts for investigative purposes, not to prevent injustice in a judicial proceeding. The body of the Board's letter to the United States Attorney states:

> As you may know, the Texas State Board of Medical Examiners is currently conducting an investigation with regard to possible violations of the Medical Practice Act by one of its licensees, John Young, M.D., of Athens, Texas. In this regard, please furnish to this Board all transcripts and statements, probation reports, copies of prescriptions that were utilized in your investigation, the grand jury transcript and taped records which might be helpful to this agency in completing its investigation.
>
> If you have any questions regarding this request, please do not hesitate to contact me. On behalf of the Board, may I express to you our appreciation for your cooperation.

█ It is doubtful that the Board could more explicitly have requested the transcripts for *investigative purposes*. Disclosure of grand jury transcripts for such purposes has been condemned.

> The [Federal Trade] Commission does not seek the grand jury evidence for use in any judicial proceedings; it seeks a private disclosure in aid of an administrative investigation into possible violations of the cease and desist orders.
>
> There is no judicial proceeding now pending and it is possible that none may result from the investigation. The function of the Commission is to ascertain whether there is reason to believe that one or more of the corporations is liable to a penalty, and if it is so ascertained, to certify the facts to the Attorney General. The exclusive authority to enforce the statutory provision is vested in the Attorney General. The investigation undertaken by the Commission is preliminary to and in connection with the ex parte administrative proceeding contemplated by the statute; it is not preliminary to or in connection with a judicial proceeding within the intendment of the rule.

*In re Grand Jury Proceedings*, 309 F.2d 440, 443–44 (3d Cir. 1962) (citation omitted).

> [T]he grand jury is not an investigative tool at the disposal of the SEC or any other government agency, and the grand jury process may not be abused by allowing its work-product to be funnelled to other government agencies which happen to have an interest in a subject which a grand jury has examined.

*In re Grand Jury Investigation*, 414 F.Supp. 74, 76 (S.D.N.Y.1976).[6] *See City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 486, 490 (E.D.Pa.1962) ("Grand Jury transcript should never be opened solely for discovery purposes.") *Cf. United States v. Stanford*, 589 F.2d 285, 292 (7th Cir. 1978) (grand jury investigation satisfies Rule 6's judicial proceeding requirement).

## II.

## THERE IS NO COMPELLING NECESSITY REQUIRING DISCLOSURE

█ Even if the judicial proceeding requirement were met in this case, disclosure

---

**6.** In Rule 6, Congress provided for instances in which grand jury transcripts may be used for investigation. Rule 6(e)(3)(A)(i)–(ii) permits disclosure of grand jury transcripts to attorneys for the federal government and to government personnel necessary to assist a government attorney in the performance of his or her duty to enforce federal criminal laws. That rule has been explicitly interpreted as not allowing disclosure to state investigators, including municipal, county and state attorneys. *Special February 1971 Gand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973); *In re Holovachka*, 317 F.2d 834 (7th Cir. 1963); *In re Grand Jury Proceedings*, 483 F.Supp. 422, 423 (E.D.Pa. 1979) (Rule 6 does not permit disclosure to an attorney for a state). Indeed, disclosure under that provision is limited to attorneys for the United States Department of Justice, or to other federal attorneys for purposes rationally related to civil matters within the duties of a Department of Justice lawyer. *In re Grand Jury*, 583 F.2d 128 (5th Cir. 1978). There is no reason to judicially interpret the judicial proceeding exception in Rule 6 to permit a type of disclosure which seems to have been deliberately omitted by Congress in a statutory provision explicitly dealing with the use of grand jury material for investigative purposes.

is inappropriate because the government has made an insufficient showing of need for the disclosure of the requested transcripts. The extent of the need that must be shown to justify disclosure of grand jury materials has been variously stated. It has been held that the requesting party must show that "the need for disclosure is greater than the need for continued secrecy." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). It has also been held that the "indispensable secrecy of grand jury proceedings . . . must not be broken except where there is compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with great particularity." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.E.2d 1077 (1958).[7] *Accord, In re Grand Jury Proceedings,* 613 F.2d 501, 506 (5th Cir. 1980) ("This Court recognizes that compelling necessity can justify breaking the otherwise indispensable secrecy of grand jury proceedings."); *Paz v. United States,* 462 F.2d 740, 746–47 (5th Cir. 1972) (criminal defendant must show particularized need for grand jury transcripts). As to the need for the requested disclosure to the Texas State Board of Medical Examiners, the government only asserts that "the need for disclosure [has] become so necessary." It offers no more justification for disclosing otherwise secret material, nor can any greater justification be wrung from the meager pleadings and briefs filed to date. Such a showing is manifestly insufficient. The court is left with nothing more than the conclusory assertion of the United States Attorney, stated in the form of *ipse dixit.* Indeed, it is difficult to imagine a more barren explanation of the need for the requested transcripts.[8] The court does have an intuitive notion regarding the importance of an investigation by an administrative licensing agency into the qualifications of a physician who has pleaded guilty to drug charges.[9] But the court's intuition

7. A United States Senate committee considering changes in Rule 6 in 1977, approved the *Procter & Gamble* decision by citing it after stating: "[T]he Committee believes and intends that the basis for a court's refusal to issue an order under paragraph (C) [of Rule 6] to enable the government to disclose grand jury information in a non-criminal proceeding should be no more restrictive than is the case today under prevailing court decisions." S.Rep. No. 95–354, 95th Cong., 1st Sess. 8 & n. 13, *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 527, 532.

8. Compare the following disclosure request with that before the court.

> Much of the information involved in this investigation was developed by members of the Organized Crime Bureau of the Dade County Public Safety Department. Because of the familiarity of these Dade County officers with the witnesses and the evidence, it is essential to the investigation that they be permitted to have access to exhibits and testimony presented to the Grand Jury.

*In re Miami Federal Grand Jury No. 79–8,* 478 F.Supp. 490, 493 (S.D.Fla.1979). The court refused to release the requested transcripts, stating:

> The Government has presented only the most minimal showing of need, stated in a conclusory fashion. Yet the disclosure sought, and thus the danger of abuse to grand jury secrecy, is broad. Without more

of a showing by the government, this court is unwilling to invade what the Fifth Circuit has described as "a sanctuary, inviolate to *any* intrusion, . . . where a witness may testify, free and unfettered by fear of retaliation." *Texas v. United States Steel Corp.,* 546 F.2d 626, 629 (5th Cir. 1977) (emphasis and ellipsis in original).

*Id. See In re Brooke's Petition,* 229 F.Supp. 377, 377–78 (D.Mass.1964) (state attorney general did not show particularized need for grand jury transcripts by asserting his need to use them (1) for impeachment purposes in civil proceeding and (2) to complete a criminal investigation). *See Thomas v. United States,* 597 F.2d 656, 658 (8th Cir. 1979) (insufficient for habeas petitioner merely to state that transcripts would help him prove his case); *United States v. Harbin,* 585 F.2d 904, 907 (8th Cir. 1978) (criminal defendant made insufficient showing by "a general plea that an inspection of the minutes might yield a ground upon which to move to dismiss the indictment"); *United States v. Downey,* 195 F.Supp. 581, 588 (S.D.Ill. 1961) (conclusory affidavit insufficient).

9. Grand jury transcripts cannot be released merely because such transcripts might be useful to a requesting party or relevant to a matter before such party. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 486, 489 (E.D.Pa.1962).

cannot be substituted for the particularized showing of need that must be made by a party requesting disclosure of secret grand jury material.[10]

■ Finally, it is difficult even to speculate that the Texas State Board of Medical Examiners has a great need for the requested transcripts in light of its ability to obtain the information from other sources. The Board has the authority to subpoena documents and witnesses that it feels will be helpful to its investigation.

> The Texas State Board of Medical Examiners shall have the power, and may delegate said power to any committee, to issue subpoenas, and subpoenas duces tecum to compel the attendance of witnesses, the production of books, records and documents, to administer oaths and to take testimony concerning all matters within its jurisdiction.

Tex.Rev.Civ.Stat.Ann. art. 4509. The Board's ability to obtain the information it requests by means other than violating grand jury secrecy militates against ordering disclosure of the requested transcripts. *See Paz v. United States*, 462 F.2d 740, 747 (5th Cir. 1972) (existence of alternative source of information relevant regarding whether to violate grand jury secrecy); *In re Holovachka*, 317 F.2d 834, 837 (7th Cir. 1963); ("In view of the evidence received at [a lawyer's] . . . trial for income tax evasion, and the wide publicity given thereto, it is difficult to believe that in order to obtain [his] . . . disbarment . ., it was necessary for the Attorney General . . . to ask that the veil of secrecy of the grand jury proceedings to be lifted as to [a witness'] . . . testimony."); *In re Blue Ribbon Frozen Food Corp.*, 414 F.Supp. 399, 401 (D.Conn.1976) (congres-

sional committee has power to subpoena); *In re Grand Jury Investigation*, 414 F.Supp. 74, 77 (S.D.N.Y.1976) (no need to intrude on grand jury secrecy because witness' memory could be refreshed with statements made prior to his grand jury appearance); *In re Grand Jury Transcripts*, 309 F.Supp. 1050, 1052–53 (S.D.Ohio 1970) (where trial testimony of two witnesses substantially same as grand jury secrecy by producing grand jury transcripts); *In re Bullock*, 103 F.Supp. 639, 641 (D.D.C.1952) (insufficient need for disclosure of grand jury transcript where trial testimony of witness obtainable). *See also In re Grand Jury Proceedings*, 483 F.Supp. 422, 425 (E.D.Pa.1979) (disclosure not necessary where equivalent information obtainable through state proceeding).

## III.

### BREADTH OF THE REQUEST

■ A party requesting disclosure of secret grand jury material must show that its "request is structured to cover only material" for which a showing of need has been made. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). *See Dennis v. United States*, 384 U.S. 855, 869, 86 S.Ct. 1840, 1848, 16 L.Ed.2d 973 (1966) (disclosure should be made "discretely and limitedly"); *Allis-Chalmers Mfg. Co. v. City of Fort Pierce*, 323 F.2d 233, 242 (5th Cir. 1963) ("Disclosure . . . must be closely confined to the limited portions of the testimony for which there is found to be a particularized need."). No such showing has been made. Although the letter from the Board to the United States Attorney, quoted in Part I, *supra*, requests *everything* that "might be helpful" to an agency investiga-

---

**10.** It could be said that society has a special interest in determining the fitness of a physician who has been convicted of drug violation to continue in the practice of medicine, and that this interest overbears the legal technicalities built up over the centuries which surround grand jury proceedings with walls of secrecy. Although the societal interest cannot be seriously questioned, it cannot be allowed to impair the efficient operation of the grand jury as an institution or the constitutional and statuto-

ry rights of citizens who have been scrutinized by grand juries. "[A]ll constitutional guarantees extend both to rich and poor alike, to those with notorious reputations, as well as to those who are models of upright citizenship. No regime under the rule of law could comport with constitutional standards that drew such distinctions." *Smith v. United States*, 423 U.S. 1303, 1307–08, 96 S.Ct. 2, 5, 46 L.Ed.2d 9 (Douglas, Circuit Justice), *vacated*, 423 U.S. 810, 96 S.Ct. 21, 46 L.Ed.2d 30 (1975).

tion, the Government requests disclosure of the transcription of the testimony of nine witnesses only. It is not evident how or why these nine were chosen.[11] Nowhere is there an explanation of the relevance of any of the testimony sought to be disclosed.[12] The court is left with nothing more than the implicit assertion that the prosecutor has made his request for disclosure as narrow as possible. It would be an abdication of the judicial role simply to accept that this is so in the absence of a specific demonstration. *See United States v. Salanitro*, 437 F.Supp. 240, 246–47 (D.Neb.1977), *aff'd sub nom., In the Matter of Disclosure of Testimony Before the Grand Jury*, 580 F.2d 281, 286–87 (8th Cir. 1978) (imposing safeguards on disclosure); *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 486, 491 (E.D.Pa. 1962) (narrow disclosure ordered).

## CONCLUSION

Every breach of grand jury secrecy impairs the efficient operation of the grand jury system in our federal judicial system.

*See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."). This is no less the case because the grand jury panel has been dismissed.[13] Even then, a breach of grand jury secrecy discourages "free and untrammeled disclosures by persons who have information with respect to the commission of crimes" because "[f]ear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." *Id.* at 219 n.10 & 222, 99 S.Ct. at 1673 n.10 & 1674.

Breaches of grand jury secrecy also impair the fairness of the entire grand jury process. The grand jury scheme is inquisitional. A person investigated by the grand jury has no right to confrontation of witnesses, no right to cross-examination of witnesses, no right to present his own witnesses, and, indeed, no right to testify before the grand jury.[14] This scheme may well be

---

**11.** The Fifth Circuit has noted the abusive potential for prosecutors to select out testimony from grand jury transcripts that might give a one-sided impression of the entire proceedings before the grand jury. *United States v. Malatesta*, 583 F.2d 748, 753, *modified en banc*, 590 F.2d 1379 (5th Cir. 1979).

**12.** It cannot be assumed that the requested transcripts relate only to matters that are relevant to the Board's licensing decision. Investigatory power of very broad scope resides in the grand jury. *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). There has been no representation that the requested transcripts relate to any of the offenses to which he pleaded guilty. Indeed, there has been no representation whatever regarding the relevance of the transcripts requested. Moreover, Dr. Young has not been indicted by a grand jury. The existence of an indictment would at least indicate that the grand jury found probable cause to believe that Dr. Young committed some offense. *See Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659–2660, 33 L.Ed.2d 626 (1972) (function of grand jury to determine if there is probable cause to believe that person has committed a crime). The combination of the lack of an indictment against Dr. Young and the broad scope of inquiry of a grand jury investigating him means that production of the re-

quested transcripts might reveal irrelevant material which, while harmful to the doctor, did not produce probable cause warranting indictment.

**13.** *In re Grand Jury Investigation*, 414 F.Supp. 74, 76 (S.D.N.Y.1976) (particularized need test applied even if grand jury panel discharged). *But cf. State v. Sarbaugh*, 552 F.2d 768, 774–77 (7th Cir. 1977) (collecting cases indicating that less particularized showing of need required if grand jury panel discharged).

**14.** In addition, the grand jury can consider evidence of almost any type. *See Bracy v. United States*, 435 U.S. 1301, 1302, 98 S.Ct. 1171, 1172, 55 L.Ed.2d 489 (1978) (Rehnquist, Circuit Justice) (grand jury may use hearsay and otherwise inadmissible evidence); *United States v. Calandra*, 414 U.S. 338, 344–45, 94 S.Ct. 613, 618–619, 38 L.Ed.2d 561 (1974) (indictment not affected by character of evidence grand jury considered, whether incompetent, inadequate, or obtained in violation of a constitutional right); *United States v. Dionisio*, 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973) ("The [grand] jurors may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge."); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictment based on hearsay evidence

necessary in determining the existence of probable cause for society to force an individual to stand trial for the commission of crime, but it is subversive of the entire grand jury process to convert the grand jury into an investigative organ of state administrative agencies.[15] At the least, the production of grand jury transcripts might present a one-sided and incorrect picture. Although these concerns could be diminished if the transcripts were made available to Dr. Young,[16] it is extremely doubtful that the Government would support such a disclosure.[17]

█ In light of the importance of grand jury secrecy to the integrity of the grand jury process and the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), the strictures of Rule 6 should be enforced without expansion. *United States v. Malatesta*, 583 F.2d 748, 753, *modified en banc*, 590 F.2d 1379 (5th Cir. 1979) ("Judicial exceptions to the broad sweep of Rule 6 should not be expanded."); *In re*

*Grand Jury Proceedings*, 309 F.2d 440, 443 (3d Cir. 1962) (Rule 6 "is not ambiguous and we see no reason to extend its application by judicial interpretation."). The Government has not shown that disclosure of the requested transcripts would be made preliminarily to or in connection with a judicial proceeding. It has not shown with particularity the need that demands disclosure. It has not shown that its disclosure request is structured to cover only material that is needed. In fact, the Government has made an unbounded request for grand jury material to be used in a state administrative investigation. "The possibility of an unnecessary breach of grand jury secrecy in situations such as this is not insignificant." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 229, 99 S.Ct. 1667, 1678, 60 L.Ed.2d 156 (1979).

In light of the foregoing, it is, accordingly,

ORDERED that the request for disclosure of grand jury transcripts in the above-captioned civil action to the Texas State Board of Medical Examiners be, and it is hereby, DENIED.

is valid). In fact, one reason for strictly construing the phrase "preliminary to or in connection with a judicial proceeding" is to insure that information of dubious reliability is tested for veracity and probative value in a setting designed to provide safeguards for ascertaining truth.

15. The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it.
*United States v. Dionisio*, 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

16. "The blanket of secrecy is not so imprisoning as to defeat justice. Nor does it lift itself for one side and then re-asserts its exclusiveness as against efforts of the other side to determine whether the use by one side is accurate." *United States v. Byoir*, 58 F.Supp. 273, 274 (N.D.Tex.1945). *See Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (defendant may be entitled to grand jury transcript because inequitable for govern-

ment to have "exclusive access to a storehouse of relevant fact"); *In re Cement-Concrete Block, Chicago Area, Grand Jury*, 381 F.Supp. 1108, 1111 (N.D.Ill.1974) ("It seems . . . highly inequitable and adverse to the principles of federal discovery to allow the defendants in a civil suit access to grand jury transcripts but not the plaintiffs.").

17. This reluctance would be completely understandable, for such disclosure would place witnesses in fear of retaliation, the primary danger in compromising grand jury secrecy. *See In re Grand Jury Proceedings*, 613 F.2d 501, 505 (5th Cir. 1980) ("Disclosure, even indirectly, of testimony given before the grand jury would likely discourage witnesses from freely testifying before the grand jury."); *State v. United States Steel Corp.*, 546 F.2d 626, 629 (5th Cir. 1977) (witness fear of retaliation most important reason for preserving grand jury secrecy). Disclosure also would violate the implied promise of secrecy given grand jury witnesses. Moreover, many witnesses may be embarrassed by the disclosure of their testimony. This is particularly true where the witnesses may have been the patients or friends of a physician who was the target of the grand jury's investigation.